Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com
**ATTORNEYS FOR THE DUGABOY
INVESTMENT TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

| | | |
|---|---|---|
| **In re** | § | |
| | § | **Case No. 23-31039-mvl7** |
| **HIGHLAND SELECT EQUITY FUND, L.P.** | § | |
| | § | **(Chapter 7)** |
| | § | |
| **Debtor.** | § | |

**CREDITOR THE DUGABOY INVESTMENT TRUST'S OBJECTION TO DEBTOR'S MOTION TO TRANSFER/REASSIGN CASE**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 3

    A.    Procedural Background of this Motion .................................................... 3

    B.    Prior Proceedings before Chief Judge Jernigan ..................................... 4

        **1.**    HCM Bankruptcy ........................................................................ 4

        **2.**    Judge Jernigan's semi-autobiographical novels .......................... 7

    C.    Relevant standards of Judicial Conduct .................................................. 8

III.    ARGUMENTS AND AUTHORITIES ............................................................... 10

    A.    There is no authority for *intra-division* reassignment of cases ........... 10

    B.    Debtors' Motion Represents Judge Shopping ....................................... 11

    C.    Administration of Justice favors denial of the Reassignment Request ................. 12

IV.    CONCLUSION .................................................................................................. 15

CORE/3524155.0002/182999038.1

## I.       INTRODUCTION

Debtors Highland Select Equity Master Fund L.P. and Highland Select Equity Master Fund GP, LLC (collectively "Debtors") request that their newly filed Chapter 7 Bankruptcies be transferred from the assigned judges to Chief Judge Jernigan, who has been presiding over the contested Chapter 11 bankruptcy of Highland Capital Management, L.P. ("HCM") since 2019.[1] The motion should be denied for at least three independent reasons. First, there is no authority for this type of transfer. No published case in this district supports the *intra-division* transfer of a bankruptcy case from one Bankruptcy Judge to another. Indeed, in both of the cases relied upon by the Debtors, the courts *denied* the requested transfer.[2]

Second, the Debtors are indulging in prohibited judge shopping. With full knowledge of the allegations of bias that The Dugaboy Investment Trust ("Dugaboy") and Mr. Dondero have made regarding Chief Judge Jernigan, they seek transfer of these newly filed Chapter 7 bankruptcy cases to her court under a thin veil of "efficiency." No efficiency would be gained from consolidation of these Chapter 7 bankruptcy cases with the nearly four-year-old HCM Chapter 11 bankruptcy; indeed, the transfer of these newly filed Chapter 7 cases to Chief Judge Jernigan is likely to have the opposite impact given the unique and contentious nature of the HCM bankruptcy proceedings. It is much more likely that the Debtors understand Chief Judge Jernigan has developed animus towards Dugaboy and Mr. Dondero and are seeking to take advantage of it by obtaining reassignment of these cases to her. In the *Triplett* matter, the Bankruptcy Court condemned a similar *intra-division* transfer request as akin to judge shopping, which is prohibited.

---

[1] This objection is being filed in each Debtor's respective bankruptcy case, Case No. 23-31037-swe7 and Case No.23-31039-mvl7.

[2] *In re Adkins Supply, Inc.*, 2015 WL 1498856 at *8 (N.D. Tex. Bankr. Mar. 27, 2015) (denying intra-district transfer request); *see also In Re Triplett*, 645 B.R. 196, 202-03 (E.D. Tex. Bankr. 2022) (denying intra-division transfer request). "The Court does not find authority for an *intra-division reassignment* under the plain language of 28 U.S.C. §1412…nor under 28 U.S.C. §1404(a)." *Id.*

Third, and most importantly, transferring these cases to Chief Judge Jernigan would not serve the efficient administration of justice. Creditor Dugaboy and James Dondero, the co-Founder and former Chief Executive Officer of HCM, have filed multiple recusal motions in the HCM bankruptcy.[3] These motions arose first from perceived bias and animosity towards them, and second from Judge Jernigan's authorship and publication of two novels whose characters and plotlines are strikingly similar to the issues and litigants in the HCM bankruptcy and a prior bankruptcy proceeding involving Mr. Dondero.

The publication of these novels – one of which was written and published *while the HCM bankruptcy is still pending* – creates serious ethical issues under the Code of Conduct for U.S. Judges. Dugaboy retained Professor Steve Leben, a retired judge and professor of legal ethics, to review the novels and opine whether they would form a basis for recusal under the applicable standards. His conclusion was an unequivocal yes. Because the novel's protagonist, "closely modeled on Judge Jernigan, . . . made strong negative comments about hedge-fund operators" and featured "a hedge-fund operator with similarities to Dondero" as a "major villain in the second book," Professor Leben opined that "a reasonable observer would question Judge Jernigan's impartiality in presiding over bankruptcy cases involving Dondero's hedge funds."[4] As Professor Leben concluded, "Judge Jernigan should be disqualified from presiding over any remaining proceedings in either case or any other bankruptcy of a Dondero-related hedge fund."[5]

The recusal issues with Judge Jernigan, both those that arise from her perceived animus and those that arise from her authorship, are the subject of a writ of mandamus that is presently

---

[3] *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11 (hereinafter "HCM Bankruptcy") Dkt 2060 (First Motion to Recuse), **Ex. 1** [App. 001-005]; *Id.* Dkt. 3470 (Second Motion to Recuse), **Ex. 2** [App. 006-014]; *Id.* Dkt. 3570 (Third Motion to Recuse), **Ex. 3** [App. 015-017]; *Id.* Dkt. 3673 (Supplemental Memorandum in support of Third Motion to Recuse), **Ex. 4** [App. 018-023].

[4] Opinion of Steven Leben, **Ex. 5** [App. 024-058] at App. 026.

[5] *See* **Ex. 5** at App. 043.

pending in the District Court for the Northern District of Texas, Case No. 3:23-cv-00726-S.  Under

these circumstances, transferring these cases to Chief Judge Jernigan would mire these newly filed

bankruptcy cases in the procedural and substantive challenges that beset the HCM bankruptcy. For

each and all of these reasons, this Court should deny the Debtors' motions to transfer these newly

filed Chapter 7 bankruptcy cases to Chief Judge Jernigan.

## II.    BACKGROUND

### A.    Procedural Background of this Motion

1.    On June 21, 2022, with the consent of the Debtors, Judge Jernigan lifted the

injunction in the HCM Chapter 11 case to allow Dugaboy to pursue claims against Debtor

Highland Select Equity Master Fund L.P. ("Select Fund") and Debtor Highland Select Equity Fund

GP, L.P. ("Select GP").[6]

2.    In the agreed order, Judge Jernigan concluded that the claims "are colorable" and

that Dugaboy was "authorized to file suit in the United States District Court for the Southern

District of New York (or such other court of competent jurisdiction)" against Debtors.[7] It was not

contemplated that the claims would be (or could be) pursued against the Debtors in Bankruptcy

Court or in this District.

3.    On February 27, 2023, Dugaboy commenced suit against Select Fund and Select

GP in the United States District Court for the Southern District of New York, Case No. 1:23-cv-

01636-MKV (the "New York Action").  A copy of the original complaint is attached to Debtor's

motion.

---

[6] HCM Bankruptcy Dkt 3373, **Ex. 6** [App. 059-061].
[7] *Id.*

4.      On February 28, 2023, Dugaboy amended its complaint against the Debtors in the New York Action.[8]

5.      On April 20, 2023, with the consent of Dugaboy, the New York court extended the time for the debtors to answer the amended complaint to May 26, 2023.[9] The Debtors used the additional time to prepare the Chapter 7 bankruptcy filings, rather than to prepare to defend the allegations in the New York case. The day before the answer was due, on May 25, 2023, Debtors each filed for bankruptcy protection under Chapter 7 in this Court.  On June 5, 2023, counsel for the Debtors filed suggestions of bankruptcy in the New York action.[10]

6.      On June 12, 2023, Debtors filed the instant motion to transfer each Chapter 7 bankruptcy from Judge Everett (in case No. 23-31037-swe7) and Judge Larson (in case No. 23-31039-mvl7) to Chief Judge Jernigan. The Debtors' motion refers to the HCM bankruptcy as a complicated case, but makes no mention of the recusal issues. The Debtors' motion also does not describe their Chapter 7 bankruptcy cases as complicated.

**B.      Prior Proceedings before Chief Judge Jernigan**

**1.      HCM Bankruptcy**

7.      On October 16, 2019, HCM filed for bankruptcy protection under Chapter 11 in the United States Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS).  Shortly thereafter, on December 4, 2019, the HCM bankruptcy was transferred to this District, assigned Case No. 19-34054-sgj11, and assigned to Chief Judge Jernigan.

8.      Dugaboy agrees with Debtors that the HCM bankruptcy, which has been pending since 2019, is "a complex case with more than 3800 docket entries and a multitude of related

---

[8] Docket of the New York Action, **Ex. 7** [App. 062-066], at Dkt.6 [App. 064].
[9] *Id.* at Dkt.12 [App. 065].
[10] *Id.* at Dkt. 16 [App. 065]; Suggestion of Bankruptcy, **Ex. 8** [App. 067-073].

appellate and adversary proceedings….." (Motion at ¶3.)  As of July 10, 2023, there have been 3,875 entries on the docket of the HCM bankruptcy case.  A printed copy of the PACER docket runs to 495 pages.[11] In addition to the main HCM bankruptcy case, there have been 21 adversary proceedings filed.[12]

9.     Dugaboy contended in the HCM bankruptcy that the proceedings were all impacted unfairly by Chief Judge Jernigan's negative impressions and bias towards Mr. Dondero and any entity connected with him.[13]  At a hearing in January 2020, shortly after the case was transferred to this District, Chief Judge Jernigan acknowledged that she formed a negative impression of Mr. Dondero during a prior bankruptcy proceeding involving Acis Capital Management, L.P., a Delaware limited partnership, and its general partner, Acis Capital Management GP, L.L.C. (collectively, "Acis").[14] Chief Judge Jernigan presided over the Acis Bankruptcy.[15]

10.    Prior to its bankruptcy, Acis served as portfolio manager for "hundreds of millions of dollars' worth" of collateralized loan obligations ("CLOs"). Mr. Dondero served as Acis' Chief Executive Officer, and HCM provided certain services to Acis pursuant to shared services agreements. Judge Jernigan's order confirming Acis' Chapter 11 plan is replete with negative remarks about Mr. Dondero, his management decisions, and the structure of his businesses.[16]

11.    At the January 2020 hearing in the HCM case, Chief Judge Jernigan admitted that "[she] can't extract what [she] learned during the Acis case, it's in my brain," expressed negative

---

[11] *See* Court Documents (kccllc.net)**.**
[12] *See* kccllc.net/hcmlp/info/10225.
[13] **Ex. 1** at App. 001-005.
[14] HCM Bankruptcy Dkt 2062, Exhibit 2, Jan. 9, 2020 Hr'g Tr. at 78:23-79:16, **Ex. 9** [App. 074-078]
[15] *In re Acis Capital Mgmt., L.P.*, Case No. 3:18-bk-30264 (N.D. Tex.) ("Acis Bankruptcy") Judge Assignment, **Ex. 10** [App. 079-080].
[16] *See* Bench Ruling and Memorandum of Law in Support of: (A) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third Amended Joint Plan ("Bench Ruling), Acis Bankruptcy Dkt. No. 827, **Ex. 11** [App. 081-128].

opinions about Mr. Dondero (although he had not yet filed any motion or objection in the HCM bankruptcy), and opined that Mr. Dondero had a propensity to engage in bad acts (based on Judge Jernigan's perceptions formed during the Acis Bankruptcy).[17]

12.    These early conflicts between Chief Judge Jernigan and Mr. Dondero only intensified as the HCM Bankruptcy went forward. The reorganization plan in the HCM bankruptcy was confirmed on February 22, 2021. In the confirmation order, the court made many findings questioning the good faith of Mr. Dondero.

13.    Dugaboy and Mr. Dondero (among others) filed a first recusal motion not long after the confirmation order, on March 18, 2021.[18] The Motion argued that "undeniable animus that the Presiding Judge . . . has developed against James Dondero ("Mr. Dondero") and the resulting prejudicial effect of that animus on Mr. Dondero, The Dugaboy Trust, The Get Good Trust (collectively, the "Trusts") and any entity the Court deems connected to him."[19] The Court denied the first recusal shortly after it was filed, but "reserve[d] the right to supplement or amend this ruling."[20]

14.    Dugaboy and Mr. Dondero filed an amended motion to recuse on August 26, 2022.[21] They attempted to supplement the record on the original motion with additional evidence of Judge Jernigan's "high degree of antagonism, which makes it nearly impossible for Mr. Dondero and the Affected Parties to fully defend themselves and assert their rights in this forum."[22] The Court denied the second recusal motion on procedural grounds on September 1, 2022, inviting

---

[17] *See* **Ex. 9** at 78:23-79:16 [App. 076-077].
[18] **Ex. 1** at App. 001-005
[19] *Id.* at ¶1 [App. 002-003].
[20] HCM Bankruptcy Dkt. 2083, **Ex. 12** [App. 129-140]. The Movants appealed the order denying the first recusal motion, but the appeal was dismissed on jurisdictional grounds.
[21] *See* **Ex. 2** [App. 006-014].
[22] *Id.*

the filing of a new motion containing any new evidence not considered at the time of the March 18, 2021 motion.[23]

15.      Thereafter, Dugaboy and Mr. Dondero (among others) filed a third motion to recuse on October 17, 2022.[24]  The third motion detailed the evidence of animus towards Mr. Dondero across fourteen pages of the motion.[25]

### 2.      Judge Jernigan's semi-autobiographical novels

16.      While the third recusal motion was pending, counsel for Dugaboy and Mr. Dondero learned that Chief Judge Jernigan had published two novels relating to the same subject matter of the HCM business, while the court was presiding over the HCM bankruptcy and the earlier bankruptcies of Acis Capital Management L.P., and Acis Capital Management GP, LLC.  The first novel, *He Watches All My Paths*, has a 2019 copyright date, and the second, *Hedging Death*, has a 2022 copyright date. The second novel, *Hedging Death*, features a hedge-fund founder who is depicted as "a villainous murderer who conspired to kill innocent retirees for profit."[26] Dondero contends that the character is described so as to make it appear that it is based on Dondero, thus attributing falsely to him any number of heinous acts.

17.      While the novels declare that they are works of fiction, there can be little doubt that the books are based upon Chief Judge Jernigan's experiences as a sitting bankruptcy judge—and, in particular, from the experience presiding over the HCM and Acis bankruptcies.  The two novels feature a protagonist, Judge Avery Lassiter, who "is closely modeled on Judge Jernigan."[27] "[B[oth judges hear bankruptcy cases in Dallas; both judges worked at a large Dallas law firm before taking

---

[23] **HCM** Bankruptcy Dkt. 3479, **Ex. 13** [App. 141-144].
[24] HCM Bankruptcy Dkt. 3571, **Ex. 14** [App. 145-174].
[25] *Id.*
[26] **Ex. 5** at App. 035.
[27] *Id.* at App. 026.

the bench; both judges are married to a police officer; both judges have two children, a girl and a boy; and both judges have a Cavalier King Charles Spaniel breed dog named Baxter."[28] And like Judge Jernigan in the Acis and Highland Capital bankruptcies, "[t]he novel's protagonist presents a starkly negative view of hedge funds and their operators."[29]

18.     As Leben remarks, "while it's common for fiction authors to draw on their own lives, experiences, and viewpoints to varying degrees, Jernigan has made the similarities numerous and obvious. The reasonable observer would think—at least initially—that the books' author has a negative opinion of the hedge-fund industry and that she may have based the Cade Graham character in the novel on the real-life James Dondero."[30]

19.     The Court denied the third recusal motion on March 6, 2023, referring to the issues with the published novels as a "sideshow."[31]  Thereafter, Dugaboy, Mr. Dondero, and others filed a petition for a writ of mandamus in the District Court for the Northern District of Texas, seeking to require Judge Jernigan to recuse from the HCM case.  *In re Dondero*, et al., Case No. 3:23-cv-00726-S.  At the time of these objections, the writ of mandamus remains pending.

**C.     Relevant standards of Judicial Conduct**

20.     The Code of Conduct for United States Judges requires bankruptcy judges to uphold the integrity and independence of the judiciary (Canon 1), avoid impropriety and the appearance of impropriety (Canon 2), and perform the duties of the office fairly, impartially, and diligently (Canon 3). "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude

---

[28] *Id.* at App. 036.
[29] *Id.* at App. 035.
[30] *Id.* at App. 037.
[31] HCM Bankruptcy Dkt. 3676, **Ex. 15** at App. 209.

that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." Canon 2A.

21.     The Code has specific provisions relating to the use of information acquired through performance of judicial duties to advance the private interests of the judge. "A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others." Canon 2B. "A judge . . . should refrain from financial and business dealings that exploit the judicial position…" Canon 4(D)(1).  "Canon 4D requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of the judge's judicial duties." Commentary on Canon 4D. "A judge should not disclose or use nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's official duties." Canon 4(D)(5).

22.     In June 2009, the Committee on Codes of Conduct issued advisory opinion number 55 on Extrajudicial Writings and Publications.  It advised that "A judge must exercise special caution when writing about a case the judge has heard." The Committee further advised that "A judge must avoid writings that are likely to lead to disqualification. In every case, the judge should avoid sensationalism and comments that may result in confusion or misunderstanding of the judicial function or detract from the dignity of the office."[32]

23.     Finally, the Code requires judges, upon assignment to a matter, to "hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings." Canon 3(A)(2).

---

[32] Guide to Judiciary Policy Vol. 2B, Ch. 2 Published Advisory Opinions at 72-73 (available at https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02-2019_final.pdf ).

## III.    ARGUMENTS AND AUTHORITIES

### A.    There is no authority for *intra-division* reassignment of cases

24.    There are no statutes or local rules that would allow for *intra-division* reassignment of bankruptcy cases.  The Debtors acknowledge that the majority of the factors that bankruptcy courts consider when evaluating *inter-district* transfer requests, relating to access to proof, cost to attend trial for witnesses, availability of compulsory process, etc., are not applicable to an *intra-division* request. (Motion at ¶ 8.)

25.    The two cases that the Debtors rely upon in their motion *do not support intra-division* reassignment. In *In re Triplett*, cited by the Debtors, the Eastern District of Texas bankruptcy court addressed and rejected a request for *intra-division* reassignment of an adversary proceeding.  In rejecting the request, the Court evaluated the bankruptcy rules and the U.S. Code provisions governing transfer of venue, concluding that there is no "authority for an *intra-division reassignment* request under the plain language of 28 U.S.C. § 1412 . . ., nor under 28 U.S.C. § 1404(a)." 645 B.R. at 202-03. The other case Debtors rely upon, *In re Adkins Supply, Inc.*, reached a similar conclusion: "neither the District Court Local Rules nor the Bankruptcy Court Local Rules addresses intra-district transfers." *In re Adkins* at *4.

26.    As there are no rules or procedures that would govern or warrant intra-division transfer to Chief Judge Jernigan, the Code of Conduct for U.S. judges would support denial of the motion.  Canon 3(A)(2) requires judges to "hear and decide matters assigned, unless disqualified…." Nothing in the motion suggests that either assigned judge is or should be disqualified.

27.    The only justifications that Debtors offer for the *intra-division* reassignment to Chief Judge Jernigan is that she is presiding over the HCM bankruptcy.  Contrary to the Debtors'

representations, however, assignment of these newly filed Chapter 7 cases to Chief Judge Jernigan is unlikely to result in *any* efficiencies for the court or the parties.

28.     It is questionable whether there would be any efficiencies gained from reassignment of the newly filed bankruptcies to Chief Judge Jernigan.  As in *Triplett*, Judge Jernigan has never "presided in these" newly filed bankruptcies, and would be required "at a minimum, to become familiar with the status of these [proceedings]." *In re Triplett* at 204.  Chief Judge Jernigan's pre-filing review of Dugaboy's claims against the Debtor hardly amounts to a leg up on any issue that may present itself in these Chapter 7 proceedings.

29.     This Court should reach the same conclusion as the *Triplett* court in rejecting the reassignment request: "This Court disagrees that any personal knowledge [the presiding judge] may have from that experience outweighs this Court's similar ability to hear and consider any *evidence* that Plaintiffs may choose to present." *Id.* The issues in these newly filed bankruptcies should be determined by the evidence and claims that are presented herein, not some impression Chief Judge Jernigan gleaned from her gatekeeping role in the HCM bankruptcy.

**B.      Debtors' Motion Represents Judge Shopping**

30.     Although some bankruptcy courts have adopted local rules regarding assignment of affiliated cases, the Northern District of Texas has no such local rule. Efforts to manipulate judicial assignments of bankruptcy cases within the same division can amount to "judge shopping, a practice which has been for the most part universally condemned." *In re Rosenberg*, 495 B.R. 196, 203 (E.D.N.Y. Bankr. 2010).

31.     Here, the Debtors filed their Chapter 7 petitions the day before their answers were due in the litigation commenced against them by Dugaboy in the Southern District of New York. This timing suggests that the bankruptcy filings could have been made solely to avoid responding

to the New York action.  And then their first order of business in this Court is to attempt to effectuate a transfer of these cases to Chief Judge Jernigan, whose alleged animosity towards their creditor Dugaboy has been the subject of multiple recusal motions in the HCM bankruptcy.

32.     Although Debtors are aware of the recusal filings and Dugaboy's concerns with Chief Judge Jernigan, their motion is silent regarding them. This tacit position suggests that they may agree that Chief Judge Jernigan will take a dim view of their creditors, based not on evidence presented in their Chapter 7 bankruptcy, but on the filings and conduct in the HCM bankruptcy.

33.     "Treating requests for *intra-division reassignment* and *intra-district* transfer as synonymous creates the unacceptable possibility of attempted judge shopping by litigants. Allowing this to occur is clearly outside what any of the cited venue or transfer statutes are written to permit." *In re Triplett*, 645 B.R. at 202.  This Court should reject the motion to reassign the newly filed bankruptcies as prohibited judge shopping.

**C.     Administration of Justice favors denial of the Reassignment Request**

34.     Bankruptcy Rule 1001 requires matters to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding."  Reassigning these cases to Chief Judge Jernigan, given the record of the HCM bankruptcy, is likely to have the opposite effect.

35.     The allegations presented in the first, second, and third motions for recusal of Chief Judge Jernigan in the HCM bankruptcy question the Court's ability to resolve the issues in the HCM bankruptcy fairly and impartially.  Although Chief Judge Jernigan concluded in denying the third recusal motion that she "does not believe she harbors, or has shown, any personal bias or prejudice against the Movants[,]"[33] creditor Dugaboy and Mr. Dondero clearly still believe that

---

[33] **Ex. 15** at App. 192.

Chief Judge Jernigan has done so, as shown by their pursuit of a writ of mandamus seeking an order requiring her to recuse from the bankruptcy proceedings.

36.     Facing similar circumstances, one bankruptcy court noted that the litigants' subjective perception of bias, even if it did not warrant disqualification, will continue to cause multiple motions and delays.  "These delays, and the substantial likelihood of future delays, threaten to prejudice both [the debtor] and other parties-in-interest, and this prejudice must be considered in the context of the interests of justice and judicial economy." *In re Krichevsky*, 640 B.R. 524, 545 (E.D. N.Y. Bankr. 2022).  Any gain in efficiency that might arise from Chief Judge Jernigan's knowledge of related issues from the HCM bankruptcy (which is slight as discussed *supra*) will be outweighed by the inefficiencies created by the questions and allegations presented in the first, second, and third motions for recusal, as well as the pending writ of mandamus.

37.     The similarities between the HCM and Acis bankruptcies and the judge's novels, published while the bankruptcies were still going on, also creates an appearance of impropriety. "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." Canon 2A. Professor Leben has reached a simple and unequivocal conclusion regarding the issue: "The highly charged and negative statements about hedge-fund operators and the choice to make one a murderer in *Hedging Death* would lead a hedge-fund operator who might appear before Judge Jernigan to question her fairness."[34] "

38.     Judge Jernigan used inflammatory language to describe certain participants in the finance industry in her first novel, decrying "[h]igh flying hedge fund managers" that "suck up

---

[34] **Ex. 5** at App. 037.

money like an i-robot vacuum" and seem to "make money no matter what" and who routinely show "outrageous amounts of hubris" as part of their "bro culture." These statements cannot be reconciled with the caution of Advisory Opinion 55, to "avoid sensationalism and comments that may result in confusion or misunderstanding of the judicial function or detract from the dignity of the office."

39.     And it is not difficult to understand how Dugaboy and Mr. Dondero could believe that Chief Judge Jernigan's novels were connected to the Acis and HCM bankruptcy proceedings in which they were involved.  Although Judge Jernigan denies that any of the characters are based on Mr. Dondero or her experiences in the Acis and HCM bankruptcies, her subjective viewpoint is not central to the inquiry. As Professor Leben opines:

> What matters is what a reasonable observer would think about it. Jernigan concedes, as she must, that Judge Lassiter and her husband "may resemble [Jernigan] and her spouse." But it's more than "may resemble"—they are remarkably similar. In this context, given her real-life history with and knowledge about Dondero and his related entities, a reasonable observer would suspect that the real Judge Jernigan has strongly negative views about hedge-fund operators and that Cade Graham *is* modeled after Dondero. That same reasonable observer would then harbor doubts about her ability to provide fair hearings in proceedings involving hedge funds and Dondero.[35]

40.     In Chief Judge Jernigan's second novel, *Hedging Death*, the investment firm experiences economic distress largely due to extensive litigation stemming from bad investments. In denying the third motion to recuse, Judge Jernigan recites how HCM went into bankruptcy *because* of Mr. Dondero's extensive litigation history.  This suggests that Chief Judge Jernigan may have been exploiting information from a current case for her own private gain through publication of the novel in violation of Canon 4 of the judicial code of conduct.  While those issues

---

[35] **Ex. 5** at App. 040.

are presently pending in a writ proceeding, their very existence undermines the claimed goal of efficiency that Debtors are seeking in the motion.

41.     If the newly filed bankruptcy cases are not transferred to Chief Judge Jernigan, the appearance of impropriety and bias issues associated will not impact the newly filed cases.  If the Debtors' relief is granted, however, the newly filed Chapter 7 bankruptcies will inherit all of that baggage *immediately*.

42.     Given the length and complexity of the HCM bankruptcy, the swirling recusal issues that remain unresolved, the perception that Chief Judge Jernigan harbors animus towards the creditors in these newly filed bankruptcy cases, and the publication of two novels that create an appearance of bias or lack of impartiality, reassignment of these two Chapter 7 cases to Chief Judge Jernigan will generate "administrative difficulties flowing from Court congestion" and will intensify "all other practical problems" that will prevent the newly filed bankruptcies from being resolved in an "easy, expeditious and inexpensive" manner.  *In re Triplett*, 645 B.R. at 203.

43.     As Professor Leben concluded, "Judge Jernigan should not be presiding over hedge-fund bankruptcies, especially ones involving real people, like James Dondero, who resemble her fictional hedge-fund founder and villain, Cade Graham."[36] In light of these circumstances, the interests of justice do *not* favor reassignment.

## IV.     CONCLUSION

44.     For the reasons set forth above, the Debtors' motion to reassign these newly filed Chapter 7 bankruptcy cases to Chief Judge Jernigan should be denied.

---

[36] **Ex. 5** at App. 038.

Dated: July 10, 2023

Respectfully submitted,

*/s/* Deborah Deitsch-Perez
Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Attorneys for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

I certify that on July 10, 2023, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding.

*/s/* Deborah Deitsch-Perez
Deborah Deitsch-Perez